[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff moves to modify the order of alimony claiming there has been a substantial change of circumstances.
The parties intermarried on July 21, 1961 and two children were issue of the marriage. They were divorced in July 1982. At that time only one of their two children was a minor — Mark Daniel Huri born October 15, 1970. The dissolution action was tried before Charles S. House, State Trial Referee who ordered, inter alia, that the plaintiff pay the sum of $200.00 per week as unallocated alimony and child support. (The decree entered on the defendant's cross complaint).
In October 1983, the unallocated alimony and support order was modified by a reduction to $180.00 per week, it having been alleged in the motion that the defendant had become employed full time.
In October 1988, the minor child Mark Daniel reached the age of majority and, on motion of the plaintiff, his alimony payments were further reduced to $75.00 per week.
In February 1990, the defendant wife moved to modify alimony and on June 4, 1990, the alimony order was increased to $112.50 per week. By that time Mrs. Huri had been diagnosed with multiple sclerosis and was unable to work any longer. She was receiving a disability payment of $261.63 weekly ($233.72 after taxes) in addition to the $75.00 weekly alimony.
The basis of the present request to modify is the plaintiff's claim that the defendant is living with a male person in a relationship tantamount to marriage, and that she is now receiving social security disability income, thus he claims a material change of circumstances. CT Page 3731
In 1990, at the time of the last modification, the defendant had an approximate net income of $300.00 per week. She owned a single family home in Manchester which had been awarded to her in the decree of dissolution. That home, which had an equity of $96,700.00, was her place of residence. Mrs. Huri also owned a 1983 Cadillac worth $6,000.00. She had $4,300.00 in the bank and an insurance policy on her life with a cash value of $4,000.00 Her weekly expenses were $516.00 and she had approximately $3,000.00 in liabilities including charge accounts.
 I
Cohabitation
Since 1990 the defendant has found it increasingly difficult financially to maintain her previous lifestyle. The mortgage and carrying costs on her home could not be maintained by her. Her car needed major repairs which she could not afford and she depleted her assets in normal living. She tried to sell her house but the poor housing market hampered that effort.
She had a friend, Harold Fitzgerald, who owned his own home, the lower level or basement of which has a bedroom and a bathroom. Mrs. Huri made arrangements to rent that basement area. Mrs. Huri and Mr. Fitzgerald had been romantically involved in the period 1985-1986. That romantic relationship ended because of philosophical differences, disagreements over how to treat Mrs. Huri's adult son and an age difference between them. Although the romance ended, the two remained friends. They spoke on the telephone from time to time and would meet for lunch from time time. Aware of her financial problems, Mr. Fitzgerald lent Mrs. Huri money on occasion (which she always repaid). He tried to fix her car but could not do so. In November 1992, they had agreed that the defendant would move into the basement quarters and pay $375.00 per month as rent. Because Fitzgerald knew she was in financial straits, he agreed that she could stay rent free until she could get back on her feet. She started paying rent in April 1993.
At that time, Mrs. Huri had a nephew who was returning to Connecticut after military service. The nephew was interested in buying the defendant's home so she agreed to rent it to him at $600.00 per month until he could find steady employment, qualify for a mortgage, and buy the property. Unfortunately the nephew and his wife separated and with the loss of her income it became CT Page 3732 impossible for the nephew to get a mortgage. He continues to rent the home for $600.00 per month. Mrs. Huri pays the mortgage of $509.00, plus the water bill, taxes and insurance. The rent she receives does not cover all of her expenses of the home; but the tenant is a family member and he still hopes to be able to buy the house.
Mr. Fitzgerald owns several vehicles and he lets the defendant borrow one — usually a couple of times a week — to run errands and the like. She puts gas and oil into the car and pays for minor repairs. Her vehicle was sold in 1992 for $3,000.00 and the money was spent for living expenses.
From the evidence which the Court finds credible, the Court concludes that the parties are not living together under circumstances which would alter the defendant's living expenses. Mrs. Huri did not move into Fitzgerald's home to live with him in the manner of husband and wife. She is basically a tenant. They generally eat separately and have their own separate living quarters. They do not vacation together and Mrs. Huri looks forward to one day being sufficiently independent to have her own car and apartment without having to impose on her friendship with Mr. Fitzgerald. There is no assurance that Fitzgerald will remain in Connecticut. He has family in Maine and frequently goes to that state and while he has no immediate plans to move, he is retired and has given some thought to doing that.
Financial Circumstances
It is somewhat disingenuous for the plaintiff to argue that the defendant's living expenses have decreased from $516.00 per week in 1990 to $209.00 at present. Her expenses appear modest and she has had to significantly alter her life style downward. She is living in basement quarters, she has depleted her savings, lost her car, cannot work and has hopes, indeed may be forced to, find a more typical accommodation. In 1990 her net weekly income was $301.00. Her current net weekly income is $330.00. Her debt (exclusive of mortgage) is approximately the same. Her mortgage debt has not been significantly reduced since 1990, perhaps it is $1,000.00 less.
The plaintiff earns $1,023.00 per week in his employment as an engineer. In 1990 he grossed $848.00 per week (The Court is comparing gross figures as his financial affidavit improperly reflects deductions from gross for savings and charities). He CT Page 3733 claims $141.00 weekly for food as compared to $65.00 for the defendant. Mr. Huri is remarried and his wife is employed, and the home in which they live is solely in her name. He testified her mortgage payment is $450.00 per month, including taxes. His financial affidavit lists his rent or mortgage, and real estate taxes at $123.00 per week. Presumably he pays the entire $450.00 per month. He has motor vehicles (3), bank accounts and savings of approximately $8,500.00 and a 401 K plan valued at $22,300.00. He has saved approximately $6,000.00 in the past year based on his financial affidavit dated March 24, 1993 in connection with his motion to modify which was withdrawn. In addition he has a pension — not shown on his financial affidavit which would pay him $1,500.00 per month at age 65 (in addition to $1,600.00 per month from his 401 K plan).
Summary — Counsel Fees
The plaintiff has failed to prove a substantial change in circumstances since the last modification.
He filed a similar motion in January 1993, which was withdrawn in August 1993. In September 1993, he filed the present motion. Mrs. Huri has been forced to defend these motions and has incurred counsel fees of $2,321.90 not including attorney's fees for this contested hearing. The defendant does not have the present ability to pay counsel fees. The plaintiff has savings and current earnings sufficient to do so. The defendant is awarded counsel fees of $3,000.00 payable within 60 days.
Klaczak, J.